**ROSENTHAL & COMPANY,**
Plaintiff,

v.

**Jack M. DODICK, Defendant.**

**No. 73 C 1221.**

United States District Court,
N. D. Illinois, E. D.

Oct. 17, 1973.

Ralph Mantynband, Arvey, Hodes & Mantynband, Chicago, Ill., for plaintiff.

Leon E. Lindenbaum, Walsh, Case & Coale, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendant's motion to dismiss or alternatively, for a change of venue.

This is an action based on diversity of citizenship seeking to redress an alleged breach of a Customer's Agreement between the plaintiff and defendant.

The plaintiff, Rosenthal & Company ("Rosenthal"), is a limited partnership organized under the laws of the State of Illinois, with its principal place of business at Chicago, Illinois. The plaintiff Rosenthal is a broker and dealer in commodities. The defendant, Jack M. Dodick ("Dodick") is a citizen and resident

of the State of New York and allegedly an experienced, sophisticated and knowledgeable trader in commodities. The amount in controversy, exclusive of costs and interest, exceeds the sum of $10,000.00.

The plaintiff in the complaint alleges, *inter alia,* the following facts:

1. On or about February 15, 1973 Rosenthal and defendant Dodick entered into a Customer's Agreement which provided, among other things, that "all monies which the undersigned [defendant Dodick] owes to you [plaintiff Rosenthal] at any time shall be repayable to you at your office in Chicago." From time to time and in accordance with statements of accounts (purchase and sale), plaintiff and defendant entered into agreements for the purchase of certain commodities. As to each transaction plaintiff caused a written confirmation to be mailed from the office in Chicago to the defendant. Defendant did not in any manner or at any time object to the written confirmations or any of the terms thereof.

2. After plaintiff made purchases on the defendant's behalf, plaintiff demanded that defendant deposit with them additional monies, in accordance with the Customer's Agreement. Defendant Dodick failed and refused to deposit the additional funds demanded. Thereupon the plaintiff Rosenthal liquidated defendant Dodick's account. After allowing full credit for the commodities liquidated and all other just set offs or claims, defendant is indebted to plaintiff in the sum of $444,492 plus interest.

3. On or about March 2, 1973 plaintiff demanded that defendant deposit with them additional sums of money for margin. At that time the market price of commodities purchased for the defendant had dropped and the defendant's previous deposits of margins were inadequate. In order to induce plaintiff to continue to carry defendant's account, defendant made and delivered to plaintiff his personal check for $100,000.00 dated March 3, 1973. On or about March 5, 1973 the defendant ordered the drawee bank to stop payment on the check. The check was returned to the plaintiff dishonored on or about March 12, 1972. By this time the market price of the commodities in question had dropped still further. As a direct and proximate result of these wrongful acts of the defendant plaintiff was injured in the sum of $444,492.97. Further the actions of the defendant were willful and malicious. Plaintiff ought to have and recover punitive damages in the sum of $450,000 and the amount of the dishonored check.

The defendant in his instant motion contends that the plaintiff has failed to properly allege that this Court has subject matter jurisdiction over this action. Further, the defendant contends that this Court lacks jurisdiction over the person of the defendant. In the alternative the defendant contends that this Court should transfer this action to the Southern District of New York in the interest of justice and for the overall convenience of the parties and witnesses.

The defendant, in support of his motion, has submitted his affidavit which states in relevant part:

1. "I have never been in Illinois for the purpose of transacting any business with Rosenthal & Company. I never made any telephone calls to Rosenthal & Company in Illinois. Rosenthal & Company has a business office located at 2 Coentis Slip, New York City, New York (hereinafter referred to as 'Rosenthal's New York office')."

2. "Mr. Claude C. Huang, whose residence is 2 Horizon Road, Fort

Lee, New Jersey, an employee of Walston & Co., Inc., with offices at 32 Commerce Street, Newark, New Jersey, solicited me on behalf of Rosenthal & Company to become a customer of Rosenthal in personal conversations in New York and New Jersey during the period February 12–15, 1973. I had never transacted any business with Rosenthal & Company prior to February 15, 1973."

3. "The customer documents attached to the complaint as Exhibit A was presented to me by Mr. Claude C. Huang and executed by me at Mr. Claude C. Huang's residence in New Jersey on February 15, 1973 and Mr. Huang delivered them to Mr. Philip Smith of Rosenthal's New York office."

4. "On February 21, 1973 and February 23, 1973 I delivered two checks totalling $50,000 to Claude Huang in New York City and he delivered them to Mr. Philip Smith of Rosenthal's New York office. They were deposited by Rosenthal in New York City. All of the purchases made by plaintiff allegedly on my behalf were executed by Rosenthal's New York office. I believe they were executed on commodity exchanges located in New York."

5. "On March 3, 1973 I delivered to Claude C. Huang my check for $100,000 which is attached to the complaint as Exhibit D. Claude Huang delivered the check to Mr. Philip Smith of Rosenthal's New York office and the check was deposited by Rosenthal's New York office in the Marine Midland Bank located in New York City. I

received a letter of guarantee from Rosenthal & Company signed by Mr. Philip Smith. The letter was written from their New York office and hand delivered to me in New York City."

6. "It would be a hardship both to myself and to my patients for me to be compelled to come to Chicago, Illinois for trial of this lawsuit. All of my records relating to my transactions with Rosenthal are located in New York City, New York."

The plaintiff, in opposition to the instant motion, contends that this Court has subject matter jurisdiction over the instant action and personal jurisdiction over the defendant. The plaintiff further contends that this Court should not transfer the instant action.

 In support of its position, the plaintiff has submitted the affidavit of Richard Mortell which states, in relevant part, that: (1) each and every member of the plaintiff's limited partnership are residents of the Northern District of Illinois; * and (2) in accordance with the terms of the agreement between the parties, the defendant agreed to make payments at plaintiff's offices in Chicago, Illinois; and (3) defendant, in fact, did make payments to plaintiff, which were credited to him at plaintiff's offices in Chicago.

██ It is the opinion of this Court that it lacks personal jurisdiction over the defendant Jack M. Dodick.

Rule 4(e) of the Federal Rules of Civil Procedure provides that federal courts are to follow state rules regarding the assertion of *in personam* jurisdiction over nonresidents to the extent such rules are consistent with due process.

---

* The long standing rule is that, for purposes of diversity jurisdiction, courts look to the citizenship of the individual partners of a partnership. See Great Southern Fire Proof Hotel v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900); Woodward v. D. H. Overmyer Co., 428 F.2d 880 (2nd Cir. 1970). After examining the instant complaint it is clear to this Court that the

plaintiff has failed to properly allege diversity of citizenship as is required by 28 U.S.C. § 1332. The plaintiff's allegation of mere diversity of residence is not sufficient. While this Court has based its instant ruling on other grounds for dismissal, this failure to properly plead diversity of citizenship is sufficient in and of itself for the dismissal of the instant complaint.

■ The legislative intent of the Illinois long arm statute (Chapter 110, §§ 16 and 17 of the Illinois Revised Statutes) is to exert jurisdiction over nonresidents to the extent permitted under the due process clause. O'Hare International Bank v. Hampton, 437 F.2d 1173 (7th Cir. 1971); Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481 (7th Cir. 1968); Nelson v. Miller, 11 Ill.2d 378, 143 N.E. 2d 673 (1957); Ziegler v. Houghton-Mifflin Co., 80 Ill.App.2d 210, 224 N.E. 2d 12 (1967). The due process implications of the extention of personal jurisdiction over nonresident defendants were settled in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958). The thrust of these decisions is that sufficient "minimum contacts" must exist in the forum state so that jurisdiction over nonresident defendants is reasonable and just according to traditional concepts of fair play and substantial justice. There is no set formula or rule of thumb for determining whether there are sufficient minimum contacts short of ascertaining what is fair and reasonable in the circumstances of a particular case. Hutter Northern Trust v. Door County Chamber of Commerce, supra.

■ Thus, the relevant inquiry is whether the defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); Consolidated Laboratories, Inc. v. Shandon Scientific Co., 384 F.2d 797 (7th Cir. 1967).

Defendant made no personal visits to Illinois, sent no written communications to Illinois and placed no telephone calls to Illinois concerning the subject matter of this lawsuit. The relationship between defendant and plaintiff was initiated in New York and New Jersey. The transaction of business between plaintiff and defendant was conducted exclusively in New York where the commodities were respectively purchased and sold and where plaintiff accepted and deposited the defendant's money. The plaintiff has failed to state any facts which would constitute the sufficient minimum contacts necessary to confer the fair and reasonable jurisdiction of this Court over the defendant. The unilateral action of plaintiff in sending confirmations and statements of account to defendant from its Chicago office rather than its New York office cannot satisfy the requirement of minimum contact with Illinois because it is the acts of the defendant which are relevant. Hanson v. Denckla, supra; Fisons Limited v. United States, 458 F.2d 1241 (7th Cir. 1972).

■ The provision of the "customer agreement" providing for the payment at plaintiff's Chicago office was a "boilerplate" provision. All moneys were paid by defendant to plaintiff at its New York office and were deposited by plaintiff in its New York bank account. Furthermore, if the mere payment of money or shipment of goods into Illinois were sufficient to confer long arm jurisdiction it would follow that the existence of a business relationship with an Illinois resident would automatically sustain Illinois jurisdiction. It is clear that no federal or state court would confer such a broad grant of personal jurisdiction. See Hanson v. Denckla, supra; Geneva Industries, Inc. v. Copeland Construction Corp., 312 F.Supp. 186 (N.D. Ill.1970); Quartet Manufacturing Company v. Allied Traders Ltd., 343 F.Supp. 1302 (N.D.Ill.1972).

Further, there have been no facts presented by the parties which would demonstrate that the defendant, by his own actions, sought to invoke the benefits and protections of the laws of Illinois. It is offensive to the concept of due process and reasonableness to conclude that a brokerage firm with a New York office can compel a New York resident defendant to stand trial in Illinois

as a result of the transaction of business between the parties at the plaintiff's New York office. See United Securities Co. of America v. Hornblower & Weeks, Hemphill & Noyes (D.C.Oregon, Civil No. 72–647, decided June 22, 1973).

This Court lacks personal jurisdiction over the defendant because the defendant has never "transacted business" in Illinois within the meaning of the Illinois long arm statute and thus the defendant has not had the requisite "minimum contacts" with Illinois.

Accordingly, it is hereby ordered that the defendant's motion to dismiss is granted and the cause is dismissed without prejudice.