Benjamin MAGID, Plaintiff,

v.

MARCAL PAPER MILLS, INC.,
Defendant.

Civ. A. No. 80–365.

United States District Court,
D. Delaware.

July 6, 1981.

---

E. Leigh Hunt, Wilmington, Del., for plaintiff.

David A. Drexler, and Francis S. Babiarz, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

WRIGHT, Senior District Judge.

In this action, plaintiff Benjamin Magid is suing his former employer, Marcal Paper Mills, Inc. ("Marcal"), to recover damages for termination of his employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Plaintiff attempted to effect service of process on Marcal under the corporate long-arm statute, 8 *Del.C.* § 382. Marcal subsequently moved to dismiss, pursuant to Rule 12, Fed. R.Civ.P., for improper service of process and consequent lack of personal jurisdiction, and for improper venue. In the alternative, Marcal moved to transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404.

### I. *Factual Background*

Marcal is a New Jersey corporation with its principal office in Elmwood Park, New Jersey. Marcal produces paper products which it usually sells to wholesalers or local headquarters of large chain store organizations; it does not ordinarily sell to retailers. Though Marcal does not ship goods to any warehouses or headquarters in Delaware and is not authorized to do business in Delaware, it does deliver a very small percentage of its products to one Delaware wholesaler, and supervises the sale of its products in stores in Delaware. Supervision of northern Delaware sales is carried out by Marcal's Ardmore, Pennsylvania office which also covers Philadelphia and southern New Jersey; Marcal does not, however, station employees or have a telephone listing in Delaware.

Plaintiff Magid, a Pennsylvania resident, was employed by Marcal and worked out of the Ardmore office as a salesman, set-up man, and sales supervisor from 1961 until his discharge in 1979. He at various times visited Delaware stores to set-up displays

and encourage retailers to purchase Marcal products, supervised an employee who covered Delaware stores, and supervised the one Delaware wholesale account, in addition to carrying out his duties with respect to Marcal's Pennsylvania stores. The parties disagree as to the extent of Magid's work in Delaware and as to the exact nature of his sales activity in Delaware stores.[1] The decision to discharge Magid was made at Marcal's main office in New Jersey.

## II. Legal Issues

The Court must first resolve the issue of *in personam* jurisdiction.

### A. 8 Del.C. § 382

In this federal question case, service of process was made under 8 *Del.C.* § 382,[2] pursuant to Rule 4(d)(7), Fed.R.Civ.P. The Court must now determine whether Marcal is amenable to service under this statute, and if so, whether exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ Under 8 *Del.C.* § 382, process can be served on Marcal, a foreign corporation not licensed to do business in Delaware, only if (1) it transacts business generally in Delaware and (2) the civil action in question arises or grows out of any business transacted by Marcal in this state. *Simpson v. Thiele, Inc.*, 344 F.Supp. 7 (D.Del.1972). Addressing the second requirement first, this Court is guided by its previous holding that the "arising out of" requirement should be construed narrowly since it is "a legislatively imposed limitation on the constitutionally permissible breadth of long-arm jurisdiction." *Fehl v. S.W.C. Corp.*, 433

F.Supp. 939, 944 (D.Del.1977). Under this narrow construction, this Court in *La Chemise Lacoste v. General Mills, Inc.*, 53 F.R.D. 596 (D.Del.1971), *aff'd*, 487 F.2d 312 (3d Cir. 1973), found that the claim of trademark infringement did not arise out of the foreign corporation's transaction of business in Delaware since in Delaware the corporation sold only items not bearing the contested trademark. Likewise, in *Simpson*, the Court held that plaintiff's suit for damages resulting from an injury incurred while using a machine manufactured by defendant did not arise out of any business transacted in Delaware since the machine was both manufactured and delivered to plaintiff in Pennsylvania. In contrast, a sale in Delaware, among other places, of goods bearing the contested trademark has been held to be an adequate Delaware nexus to ground a trademark infringement suit. *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 374 F.Supp. 184 (D.Del.1974).

■ Although Marcal sells the bulk of its goods to suppliers outside the state, Marcal's products are sold in Delaware stores, and Magid's employment did involve activity in Delaware. However, his suit alleges age discrimination by Marcal in discharging him. The challenged action, the decision to discharge, was made in New Jersey, and arises out of Magid's relationship to his employer, not out of his or his company's sales activity in Delaware. Neither party contends that Magid's discharge was related to his work in Delaware, and the Court so finds. The existence of some connection between Delaware and the subject of this lawsuit does not suffice; in view of the fact that the cause of action did not grow out of any business transacted here by Marcal,

---

1. The Court makes no findings on these points which are superfluous to the disposition of defendant's motion.

2. 8 *Del.C.* § 382 provides, *inter alia*:
 (a) Any foreign corporation which shall transact business in this State without having qualified to do business under § 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit

or proceeding against it in any state or federal court in this State arising or growing out of any business transacted by it within this State. The transaction of business in this State by such corporation shall be a signification of the agreement of such corporation that any such process when so served shall be of the same legal force and validity as if served upon an authorized officer or agent personally within this State.

Marcal is not amenable to service of process under 8 *Del.C.* § 382.

## B. *10 Del.C. § 3104*

Plaintiff alleges a second statutory basis of jurisdiction, Delaware's general long-arm statute, 10 *Del.C.* § 3104, in accord with Rule 4(d)(7) and (e), Fed.R.Civ.P., although the service of process on Marcal did not make reference to this statute. Defendant not only contests its amenability to service under this statute, but also alleges that plaintiff did not comply with the technical formalities of § 3104. Since plaintiff would have time under the statute of limitations to correct defective service, the Court will proceed to determine whether jurisdiction can be had under this statute. The Court will first consider, as above, whether § 3104 provides for jurisdiction in this case, and, if so, whether exercise of that jurisdiction meets the constitutional requirements of due process.

### 1. *The Delaware Long-Arm Statute*

Section 3104 provides for exercise of personal jurisdiction over nonresidents who commit any of a number of acts. Plaintiff relies upon two particular provisions, subsections 1 and 4 of § 3104(c):

(c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

. . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

Since subsection (c)(1)'s provision for jurisdiction where the cause of action arises out of the transaction of business is almost identical to that in 8 *Del.C.* § 382, the discussion above controls; jurisdiction over Marcal cannot be had under this provision. Subsection (c)(4), however, is an expansion beyond 8 *Del.C.* § 382. Defendant argues that § 3104(c)(4) is not applicable because age discrimination is not a "tortious injury" and Marcal does not regularly do or solicit business or engage in any other persistent course of conduct in Delaware.

Delaware state courts have yet to interpret this particular section of this recently-enacted statute; however, § 3104 is closely modeled upon § 1.03 of the Uniform Interstate and International Procedure Act (the "Procedure Act"), 13 Uniform Laws Annotated § 1.01 *et seq., see Eudaily v. Harmon,* 420 A.2d 1175 (Del.1980). Section 3104(c)(4) is modeled on § 1.03(a)(4) of the Procedure Act which is not directly derived from any specific state act.[3] However, the Illinois long-arm statute adopted in 1955 contains similar language,[4] and § 1.03(a)(4) of the Procedure Act can be considered modeled in part after the Illinois

---

3. § 1.03(a)(4) of the Procedure Act reads as follows:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a [cause of action] [claim for relief] arising from the person's

. . . .

(4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state. . . .

4. Ill.Rev.Stat., ch. 110, § 17(1) reads in part as follows:

§ 17—Act submitting to Jurisdiction—Process

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

. . . .

(b) The commission of a tortious act within this State. . . .

Act. Likewise, the language of § 3104(c)(4) can also be considered derivatively drawn from the Illinois Act. In accordance with the Delaware state court practice in cases where a statute contains language similar to that in a statute of a foreign state, this Court will proceed on the presumption that the Delaware legislature also intended to adopt the construction placed on the Illinois statute by Illinois courts. *Opinion of the Justices*, 181 A.2d 215, 217–218 (Del.1962); *Stauffer v. Standard Brands, Inc.*, 40 Del.Ch. 202, 178 A.2d 311, 315 (1962), *aff'd*, 41 Del.Ch. 7, 187 A.2d 78 (1962).

██ The Illinois Act specifies that any person submits to the jurisdiction of the state courts as to any cause of action arising from his commission of a tortious act within the state; § 3104(c)(4) of the Delaware Act provides for jurisdiction of any person who causes tortious injury in or outside of the state by an act or omission outside the state. In *Poindexter v. Willis*, 87 Ill.App.2d 213, 231 N.E.2d 1, 3 (1967), the court held that the term "tortious act" was not restricted to the technical definition of a tort, "but includes any act committed in this state which involves a breach of duty to another and makes the one committing the act liable to respondent in damages." In *United States Dental Institute v. American Ass'n of Orthodontists*, 396 F.Supp. 565, 571 (N.D.Ill.1975), an antitrust action was held on this theory to be a tortious act. Moreover, in *Overby v. Johnson*, 418 F.Supp. 471 (E.D.Mich.1976), the court, when faced with a Michigan statute which predicated personal jurisdiction on the doing of an act resulting in an action for tort, defined a "tort" as the breach of a noncontractual legal duty owed the plaintiff, whether originating in statute or common law. *Id.* at 472. Since Magid's complaint alleges that Marcal breached its legal duty under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, the Court holds that plaintiff has alleged a tortious injury under the Delaware long-arm statute.

██ As to Marcal's contention that it does not regularly do or solicit business, engage in any persistent course of conduct in Delaware, or derive substantial revenue from services, or things used or consumed in the state, as specified by the remainder of § 3104(c)(4), the Court must look to the Commissioners' Comments on the Procedure Act since this terminology is not found in the Illinois Act. The only relevant Comment refers to this activity as a "reasonable connection between the state and the defendant," which need not necessarily "amount to the doing of business." Comment to § 1.03(a)(4) of the Procedure Act. In the absence of any further exegesis, the Court concludes that the alternative categories of activity indicate that either substantial volume of business or continuity of operation in Delaware is sufficient. On this reading, Marcal's regular shipment of goods to even a single Delaware wholesaler and its continuous supervision of certain aspects of the retail sale of its products in Delaware are more than enough to meet this second requirement of § 3104(c)(4). Therefore, Marcal is amenable to service of process under this statute.

### 2. *Constitutional Limits on Jurisdiction*

██ The question remains whether exercise of jurisdiction pursuant to § 3104(c)(4) comports with due process. In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court recognized that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158, *quoting from Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278. Following *International Shoe,* "the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* [*v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878)] rest, became the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683

(1977). That inquiry requires an evaluation of the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the defendant's interest in avoiding the burden of litigating in an inconvenient forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

 In the instant case, the Court must determine whether it has jurisdiction over the defendant where the cause of action did not arise out of the defendant's activities in the forum state. The Third Circuit has stated that "[a] state must have some palpable interest—rationally connected with public policy—in adjudicating a dispute within its borders for jurisdiction to be lawfully acquired." *Empire Abrasive Equipment Corp. v. H.H. Watson, Inc.*, 567 F.2d 554, 557 (3d Cir. 1977), *quoting from Jonnet v. Dollar Savings Bank of New York*, 530 F.2d 1123, 1140 (3d Cir. 1976) (Gibbons, J., concurring). That case involved a cause of action that was related to the nonresident defendant's activities in the forum state. The consideration of state interest weighs even more strongly where the cause of action arose in a foreign jurisdiction.[5] The Due Process Clause does not allow this Court to ignore the "territorial limitations on the power of the respective States." *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958). Whatever the relative convenience of the parties, where the forum state has no interest in adjudicating the dispute, it cannot exercise jurisdiction.

 In this case, not only is the cause of action unrelated to Marcal's activities in Delaware, but the plaintiff is a nonresident whose only contacts with the state were brief business trips. Although plaintiff has sought this forum because it is personally convenient rather than to gain any procedural advantage, this forum is as unrelated to him and his suit as were the forums and plaintiffs in *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745 (4th Cir.), *cert. denied*, 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 2652 (1971), and *Seymour v. Parke, Davis & Co.*, 423 F.2d 584 (1st Cir. 1970). In both cases, the court found the contacts insufficient where nonresident plaintiffs were suing drug companies for injury resulting from drugs consumed elsewhere, and the only activities conducted by these companies in the forum states consisted of advertising and sales solicitation.[6] Since both Magid and his cause of action have no connection to Delaware, the state can hardly have an interest in providing protection to this plaintiff.

Therefore, the Court concludes that Marcal does not have sufficient contacts with Delaware to permit this Court to exercise jurisdiction pursuant to Rule 4(d)(7) and (e) and 10 *Del.C.* § 3104 consonant with the dictates of due process. In accordance with the foregoing, the defendant's motion to dismiss for lack of *in personam* jurisdiction is granted.

**5.** The Supreme Court has only once upheld the exercise of jurisdiction where the cause of action did not arise out of the defendant's activities in the forum state. *Compagnie des Bauxites de Guinea v. Insurance Co. of North America*, 651 F.2d 877 at 879 n.1 (3d Cir. 1981) (Gibbons, J., dissenting). In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952), the Court held that the defendant mining company, which conducted its principal operations outside of the forum state, had conducted activities in Ohio "sufficiently substantial and of such a nature as to *permit* Ohio" to exercise jurisdiction in a suit arising from activities which did not occur in Ohio. Even if this case is not

confined to its exceptional facts, as some commentators have suggested it might be, *see* Von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121, 1144 (1966), it, at least, requires a greater connection between the defendant and the state in cases where the cause of action did not arise out of the connection.

**6.** *See also Curtis Publishing Co. v. Birdsong*, 360 F.2d 344 (5th Cir. 1966) (where there is no rational nexus between forum state and out-of-state events giving rise to cause of action, state has no interest in litigation and is not a constitutionally permissible forum.)